■ In the Matter of QUANTUM HEALTH RESOURCES, Doing Business as OLSTEN HEALTH SERVICES, Respondent, v BARBARA DEBUONO, as Commissioner of the New York State Department of Health, et al., Appellants. [710 NYS2d 422] —Graffeo, J. Appeal from a judgment of the Supreme Court (Torraca, J.), entered July 2, 1999 in Albany County, which granted petitioner's application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to, *inter alia*, review a determination of respondents denying petitioner Medicaid reimbursement.

This proceeding arose from a challenge by petitioner to respondent Department of Health's "prior approval" requirement[1] regarding Medicaid reimbursement claims by providers of blood factor product supplied to hemophiliac recipients. Petitioner, who had objected to the Department's policy for a number of years, commenced this combined CPLR article 78 proceeding and declaratory judgment action in December 1997, after more than 200 of its claims for reimbursement were denied based solely on its failure to obtain prior Departmental approval. Supreme Court found the prior approval policy to be unlawful and directed the Department to review, within 60 days, 292 claims petitioner had submitted in May 1997 and to reimburse petitioner for those claims where it was established that the blood factor product was medically necessary. The Department appeals.

Because the Department has abandoned the "prior approval" policy and withdrawn its appeal from that part of Supreme Court's judgment that declared the policy unlawful, the sole issue before this Court is whether the Department was properly directed to review the 292 claims or, as the Department maintains, whether petitioner's challenge to the denial of those claims was untimely. Upon review of the record, we find that petitioner's challenge was not commenced within four months of a determination as to certain of the claims and, accordingly, we modify the judgment of Supreme Court.

---

1. Under the Department's policy, providers that were members of "the consortium," an informal organization of hospitals specializing in treatment of hemophilia and who purchased blood factor through the New York Blood Center, a not-for-profit organization, were exempt from the prior approval requirement. In light of the exigencies involved in the treatment of hemophiliac patients, all other providers were expected to gain "prior approval" as soon as possible after blood factor product was supplied to the patient or medical facility.

On May 15, 1997, petitioner submitted two groups of claims for reimbursement; 223 claims were presented to Computer Sciences Corporation (hereinafter CSC), the Department's agent for the processing of reimbursement claims, and 69 claims were submitted directly to the Department's Bureau of Medical Review and Payment (hereinafter the Bureau).[2] CSC issued remittance statements denying reimbursement on 159 of the 223 claims on June 13, 1997.[3] The Department did not immediately act on the 69 claims filed with the Bureau. Instead, the parties met to discuss the ongoing disagreement over the prior approval requirement.

The parties dispute precisely what occurred at the mid-July 1997 meeting. The Department contends that it agreed to allow petitioner to resubmit claims which had previously been denied, provided each claim was accompanied by additional information relating to each patient's receipt of comprehensive hemophilia treatment from petitioner. Petitioner acknowledges that the Department refused to grant its claims for reimbursement unless this additional information was submitted, but asserts that the Department agreed to review all of the 292 claims which were submitted on May 15, 1997.

In any event, consistent with the request for additional information, petitioner filed 79 claims for reimbursement in October 1997. Some were new claims for which petitioner had never before sought reimbursement but the majority were from among the claims filed in May 1997. The Department eventually agreed to reimburse petitioner for all 79 claims.[4]

It is well settled that a request for reconsideration of an administrative determination neither tolls the Statute of Limitations nor renders "an otherwise final determination nonfinal" (*Matter of Hunt Bros. Contrs. v Glennon*, 214 AD2d 817, 819; *see, Matter of Harford Taxpayers for Honest Govt. v Town Bd.*, 252 AD2d 784, 786; *Matter of Stephens v Strack*, 249 AD2d 637). Even where a request for reconsideration is granted, the

---

**2.** Petitioner apparently submitted the 69 claims to the Department, rather than seeking reimbursement through CSC, because the claims related to blood factor product supplied more than two years prior thereto, for which petitioner could not obtain reimbursement unless the Department waived the limitations period applicable to such claims for reimbursement (*see,* 18 NYCRR 540.6 [a]).

**3.** Although the Department asserted in its supporting affidavit that all 223 claims were denied at this time, the remittance statements on which it relies give notice of only 159 denials.

**4.** Thirty were granted before this proceeding was commenced and the remaining 49 were granted while the proceeding was pending in Supreme Court.

four-month Statute of Limitations within which a challenge must be commenced will run from the initial determination unless the agency conducts a fresh and complete examination of the matter based on newly presented evidence (*see, Chase v Board of Educ.*, 188 AD2d 192, 197; *Matter of Rapuzzi v City of New York, Civ. Serv. Commn.*, 161 AD2d 715, *lv denied* 76 NY2d 707; *Matter of Corbisiero v New York State Tax Commn.*, 82 AD2d 990, *affd* 56 NY2d 680). The party seeking the benefit of the defense "bears the burden of establishing by prima facie proof that the Statute of Limitations has elapsed" (*Siegel v Wank*, 183 AD2d 158, 159; *see, Matter of Rodken*, 270 AD2d 784).

Here, of the 292 claims previously submitted, petitioner established that 159 were denied in June 1997. Regardless of whether the Department later agreed to reexamine these claims, it is evident that it considered new evidence with respect to only those claims resubmitted thereafter. Accordingly, to the extent petitioner challenges any of the 159 claims that were not resubmitted, this proceeding is untimely because it was commenced in December 1997, more than four months after CSC denied the claims (*see,* CPLR 217). Supreme Court therefore erred in directing the Department to review all 292 claims submitted on May 15, 1997.

However, because the record is not clear as to the disposition of the remaining claims, including the 69 claims submitted to the Bureau,[5] the Department has failed to establish that petitioner's challenge was untimely as to these claims. Therefore, petitioner is entitled to a review of any of these claims which were denied based solely on its failure to obtain prior approval (to the extent reimbursement has not already been granted). In that regard, we conclude that Supreme Court did not intend to shift the burden concerning the medical necessity requirement to the Department but rather ordered review of the claims under the statutory and regulatory framework, without imposition of the prior approval requirement. To the extent the court's direction that the Department

---

5. At oral argument, the Department indicated that the 69 claims had been denied prior to May 15, 1997 and argued that their resubmission on that date was merely a request for reconsideration to which the Department was not required to respond and which did not toll the Statute of Limitations. We see no indication in the record that this fact was brought to the attention of Supreme Court and note that in the affidavit submitted the Department stated only that these claims "were not processed". Accordingly, we cannot say that Supreme Court erred in finding that the Department failed to meet its burden of establishing that the petition was untimely insofar as it challenged the disposition of these 69 claims.

issue "a detailed explanation of their findings" is inconsistent with the Department's obligation under that framework to communicate the basis for its denial of reimbursement claims, we vacate the directive.

We have considered the parties' remaining contentions and find them to be without merit.

Crew III, J. P., Peters, Carpinello and Mugglin, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by deleting so much of the fourth ordered paragraph therein that directs respondent Department of Health to review any of the 159 claims denied on June 15, 1997 and so much of the fifth ordered paragraph therein that requires the Department to issue detailed findings; the Department is directed to review any of the remaining 133 claims submitted on May 15, 1997 which were denied based solely on the failure to obtain prior approval and for which petitioner was not later granted reimbursement; and, as so modified, affirmed.